J. Bertram Wbgman, J.
This is a motion by plaintiffs for summary judgment declaring chapter 259 of the Laws of 19.70 which amended sections 318 and 335 of the Vehicle and Traffic Law, effective as of July 1, 1970, to be retroactive and that defendant be directed to terminate certain revocation orders issued prior thereto. Plaintiffs had originally moved to enjoin the defendant from enforcing certain orders dated May 28,1970 directing the plaintiffs to surrender their operators’ licenses and the registration stubs of an automobile. On the application defendant was temporarily stayed from enforcing the orders pending a hearing. After joinder of issue and correspondence between the attorneys for the respective parties they stipulated as follows:
“ IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN THE attorneys for the above entitled parties that this motion for a preliminary injunction be and the same is hereby deemed converted to a motion for summary judgment, all the facts alleged by the plaintiffs herein not being contested except for the usual denials on information and belief and the denials of paragraphs ‘ Thirteenth ’, ‘ Fourteenth ’, ‘ Sixteenth ’, ‘ Seventeenth ’, ‘ Eighteenth ’, 1 Nineteenth ’ and ‘ Twenty-first ’ of Plaintiffs *461 Amended Complaint. Such being the fact, both sides request this Honorable Court to Consider this Declaratory Judgment Action on the paper submitted and without further hearing.
‘ ‘ Dated this 14th day of August, 1970. ’ ’ (The denials referred to in this stipulation insofar as relevant pertain to plaintiffs’ claims of retroactivity and the effect of sections 318 and 335 as amended.)
The record discloses that on and prior to October 26, 1969 the plaintiff Theodore J. Feuerbach was the registered owner of a motor vehicle. He and his coplaintiff, Martha E. Feuerbach, his wife, were licensed operators. On the afore-mentioned date the plaintiffs were involved in an automobile-pedestrian accident. At the time of the accident Martha Feuerbach was driving. Plaintiffs duly filed an accident report with the Department of Motor'Vehicles.
The relevant portions of the sections of the Vehicle and Traffic Law in effect at that time read as follows:
“ § 318. Revocation of registrations, drivers’ licenses and nonresident privileges.
“1. (a) The commissioner, upon receipt of evidence that proof of financial security for any motor vehicle registered in this state is no longer in effect shall revoke the registration of such vehicle. * * *
“ 2. (a) The commissioner upon receipt of evidence that the owner of a motor vehicle registered in this state, or an unregistered motor vehicle, has operated, or permitted such motor vehicle to be operated upon the public highways of this or any other state while proof of financial security was not in effect with respect to such vehicle, shall revoke the registration, if any, of the vehicle and the driver’s license, if any, of such owner.
‘ ‘ § 335. Security and proof required following accident.
“ (a) Hot less than ten days nor more than sixty days after receipt by him of the report or notice of an accident which has resulted in bodily injury or death, or in damage to the property of any one person in excess of two hundred dollars, the commissioner shall forthwith suspend the license of any person operating, and the registration certificates and registration plates of any person owning a motor vehicle in any manner involved in such accident unless and until such operator (or chauffeur) or owner or both shall have previously furnished or immediately furnishes security sufficient in the judgment of the commissioner to satisfy any judgment or judgments for damages resulting from such accident, as may be recovered against such owner or * * * [from such accident.] * * * This section *462 shall not apply (1) * * * (2) * * * (3) # * *” (The listed exceptions 1, 2 and 3 are not pertinent; italics supplied.)
On April 2,4, 1970 the Legislature enacted chapter 259 of the Laws of 1970, effective July 1, 1970, which reads in part as follows:
‘ ‘ Section 1. Section three hundred eighteen of the vehicle and traffic law is hereby amended by adding thereto a new subdivision, to be subdivision thirteen, to read as follows:
“13. (a) Subject to provisions of paragraph (b), no revocation order shall be issued pursuant to this section, or if such revocation order has been issued, it shall be terminated, if the commissioner shall determine that the person involved was not aware of the fact that financial security was not in effect and the failure to have such financial security in effect was caused solely by the negligence or malfeasance of a person other than such person. The provisions of this subdivision shall not apply to any revocation order issued pursuant to subdivision one of this section.
“ § 2. Subdivision (a) of section three hundred thirty-five of such law, as last amended by chapter eighty-four of the laws of nineteen hundred sixty-nine, is hereby amended to read as follows: # * *
‘1 This section shall not apply * * *
“ (4) to such owner or operator if the commissioner shall determine that the failure to have liability coverage as described above was caused solely by the negligence or malfeasance of a person other than the person whose license or registration has been suspended or is subject to suspension, and that the person .seeking to avoid such suspension was not aware of the lack of such liability coverage. However, with respect to the provisions of (4) above, the burden of proof shall be upon the person seeking to avoid such suspension action. Provided further, that such facts shall be established by clear and convincing evidence, either by the .submission of affidavits or at a hearing called in the discretion of the commissioner. ’ ’
Some time after receipt of plaintiff’s accident report the Department of Motor Vehicles was notified by plaintiff’s insurance carrier that the finance security certificate of insurance issued to plaintiff Theodore Feuerbach was terminated on September 23,1969 (prior to the accident).
By an order dated May 28, 1970 (after the enactment but before the effective date of the amendment) the plaintiff Theodore Feuerbach was notified by the Department of Motor Vehicles as follows:
*463 “ The Department of Motor Vehicles has received evidence that you have operated or permitted the operation of a vehicle which was not covered by financial security on the date of accident as indicated above.
“ Pursuant to section 318 of the Vehicle and Traffic Law the registration of this vehicle and/or your driver’s license is hereby revoked. You are directed to surrender your driver’s license (PARTS 1 AND 2) IMMEDIATELY UPON RECEIPT OE THIS ORDER to the Department of Motor Vehicles as shown above.”
By a similar order of the same date defendant notified the plaintiff Martha ‘ ‘ that you have operated a vehicle which was not covered by financial security. Pursuant to § 318 of the V. & T. Law your driver’s license is hereby revoked.”
On June 3, 1970 plaintiff Martha Feuerbach wrote to the Department of Motor Vehicles advising said department that on September 16,1969 (prior to the accident) a check was given to a named broker for payment of an insurance policy; that she and her husband had been advised that they would get a policy in the mail. This plaintiff also submitted an affidavit to the effect that she did not know this vehicle was not covered by insurance at the time of the accident. On the same day the plaintiff, Theodore Feuerbach also wrote to the defendant and in a sworn statement alleged that on September 16, 1969 he notified his insurance broker that his policy in effect at the time would expire on September 23, 1969. He gave the broker a check for $110 in payment of the first installment and was told his application for continued insurance had been accepted and that he would receive a policy in the mail (a copy of the check signed by plaintiff Theodore Feuerbach and indorsed for deposit by insurance broker is attached to amended complaint). After the accident he was unable to contact his broker and wrote to the Department of Insurance and was advised that the said broker had been issuing forged F.S.-l forms. He contends that he was unaware that he was without coverage until he received a letter from the Department of Motor Vehicles in May, 1970, and that he did not receive the notice of revocation from the department until June 1,1970. Prior to any such notice, to wit, in February, 1970, he had transferred the automobile to his wife Martha and she had it registered and insured in her name.
On June 17,1970 plaintiff’s attorney wrote to the Department of Motor Vehicles claiming that its orders of revocation were void and unconstitutional; that chapter 259 of the Laws of 1970 is retroactive and applies to the plaintiffs since (it states that where a revocation order has been issued it shall be terminated *464 provided the plaintiffs can convince the Commissioner) they were unaware that they had no insurance and that their non-insurance was due to the wrongdoing of a third party.
By notice effective June 17, 1970' the Department of Motor Vehicle notified the plaintiff Martha that the revocation of her driver’s license had been rescinded for the reason “no knowledge ”.
On June 18,1970 the defendant wrote to the plaintiff Theodore advising him that they had accepted his wife’s statement that she did not know that his vehicle was uninsured at the time of the accident “in view of the problem you had with your broker that under the circumstances the defendant was forwarding to her a rescission of the revocation order and suspension of her driver’s license and that they would terminate the suspension if she complied with the security requirement of $500. Plaintiff Theodore was also advised, however, that the revocation of his license must remain in force, the defendant stating the following: “ I understand the problem that confronts you since you are the victim of an unfortunate situation but at the present time I regret to inform you that I am unable to assist you. ’ ’
On the same day defendant wrote to the plaintiff Martha as follows:
“ We have accepted your affidavit that you had no knowledge that ¡the vehicle that was operated by you on October 26, 1969 did pot have an automobile liability insurance policy in effect. You are now subject to the provisions of § 335 of our Safety Responsibility Law.
“An evaluation was made for a possible judgment claim under the provisions of our Safety Responsibility Law in favor of Gj-len Witkowski, an infant of 104 Irving Avenue, Brooklyn, New York in the amount of $350 for personal injuries and in favor of the parent of the infant, Glen Witkowski, in the amount of $150 for contingent expenses.
‘ ‘ Upon receipt of a security requirement of $500 in the form of a certified check, cashiers check, United States postal money orders or cash, we may then be in a position to terminate the attached suspension order.”
On June 23,1970 defendant entered an order of “ Suspension or Revocation” directed to the plaintiff, Martha to the effect that: “ Pursuant to Section 335 of the Vehicle and Traffic Law the above Driver’s License in the name of the person above is hereby suspended for uninsured accident on 10/26/69 at Brooklyn, New York. Immediate Security of $500.00 required.”
On July 9,1970 the defendant wrote the plaintiffs’ attorney as *465 follows*- ‘1 As you are aware, there is some question as to the effect of Chapter 259 of the Laws of 1970 on revocations issued prior to July 1, 1970. Since the question is one which will be raised, both by motorists arguing in behalf of retroactivity and very possibly by insurance companies arguing against retroactivity, we are desirous of obtaining a court ruling on this question. I trust that a determination will be made by the court as soon as possible.”
On August 4, 1970 defendants submitted an answer consisting of denials with the exception of admissions (1) that revocations were issued without giving plaintiffs notice of the charges and (2) the defalcation of the insurance broker involved.
On August 5, 1970 the license of the insurance broker was revoked.
Insofar as the plaintiff Theodore’s plea for the rescission of the revocation of his driver’s license is concerned it would appear that the defendant’s refusal to rescind its order was unwarranted. Plaintiffs did not receive any notice of the intended revocation; there is no evidence that he had any knowledge that the automobile was not insured. In fact, everything indicates a finding to the contrary and defendant has admitted the defalcation of plaintiff’s insurance broker. It also appears from the correspondence between the parties that the defendant was satisfied that the failure to have financial security in effect was caused solely by the malfeasance of a person other than the plaintiffs.
This court is of the opinion that the amendment in question is retroactive and applicable to the instant situation despite the stated effective date of the amendment. Bead in its entirety there can be no doubt that the statute reflects a legislative intent to terminate revocations made prior to the effective date, if the person involved was not aware of the fact that financial security was not in effect and that the failure to have such security was caused solely by the malfeasance of one other than the person involved. While it takes a clear impression of the legislative purpose to justify a retroactive application that purpose is here unmistakenly indicated. (Garzo v. Maid of Mist S. S. Co., 303 N. Y. 516; Meyer v. Halberstadt, 44 Misc. 408.)
It is difficult to conceive of language more plainly indicative of the intention of the Legislature to render a statute retroactive (Matter of Andersen, 178 N. Y. 416).
In determining the intention of the Legislature, the court is guided by reference to the legislative memoranda on the subject (see McKinney’s Session Law 1970, vol. 3, p. A-150) summarizing the provisions of the bill as follows:
*466 “ The bill would amend Section 318(13) of the Vehicle and Traffic Law to provide that the Commissioner can withhold or rescind revocation action for operating without insurance coverage where he has determined that such lack of coverage was caused by a third party without fault on the part of a licensee or registrant subject to revocation.
“A similar amendment would be made to Section 335(a) of such law relating to suspensions issued as a result of uninsured accidents. (Emphasis supplied.)
‘ ‘ The proposed bill would eliminate the inequities of the present law.”
In the opinion of the court the inequities of the prexisting law were intended to be eliminated by giving retroactive effect to the amendments thereof. Considerations of public good and administration of justice have been held by the courts to be adequate reasons for upholding retroactive legislation (Coane v. American Distilling Co., 182 Misc. 926).
The possession of a license to drive is a vested property right. (Matter of Wignall v. Fletcher, 303 N. Y. 435.) A license to operate an automobile is of tremendous value to an individual and should not be taken away on the facts disclosed in this proceeding. (Hannah v. Hults, 53 Misc 2d 921.)
To allow the revocation or suspension of plaintiffs ’ licenses to remain undisturbed, particularly where, as here, the giving of retroactive effect to the amendments of the law, does not violate due process or vested or contractual rights, would amount to a miscarriage of justice. Petition granted.